ARCHIE VEST, Plaintiff-Appellee and Cross-Appellant, *v.* THE CITY OF GRANITE CITY, Defendant-Appellant and Cross-Appellee.

Fifth District    No. 81-5

Opinion filed April 16, 1982.

WELCH, J., specially concurring.

Irvin Slate, Jr., of Granite City, for appellant.

Robert W. Bosslet, Jr., of Chapman and Carlson, of Granite City, for appellee.

JUSTICE JONES delivered the opinion of the court:

During a rainstorm that had lasted approximately an hour on the night of August 25, 1975, an automobile stalled while it was being operated in one of the four lanes of Nameoki Road, a major traffic artery of the city of Granite City. A passerby, the plaintiff, Archie Vest, offered his help to the driver of the stalled vehicle, Faye Barton. Determining that the battery of the stalled car needed to be "jumped," plaintiff turned his own vehicle around and parked it in the same lane as the disabled one, "nose to nose" with it. Plaintiff's vehicle was, then, facing in a direction opposite that of oncoming traffic and close enough to the disabled vehicle that the "jumper cables" would reach the batteries of the two vehicles. As plaintiff stood between the two vehicles attempting to connect the cables to the batteries without the benefit of flares or other devices to provide warning, a third vehicle operated by John Winklemeier struck the rear of the stalled car and pushed the stalled car forward. As a result of the forward motion of the stalled car, plaintiff's leg was pinned between the stalled vehicle and his own and was severely fractured.

In consequence of the incident John Winklemeier's insurer paid plaintiff $10,000 in settlement of a claim. Plaintiff then brought a negligence suit against S. M. Wilson Construction Co., Paul Seebold Concrete Co. and the city of Granite City for their conduct with reference to the City's storm sewers serving Nameoki Road. Because the city of Granite City was the only defendant remaining at the time of trial and is the only defendant

bringing this appeal, we shall discuss only those allegations of negligence directed against the defendant city.

Plaintiff maintained that the city's negligence with respect to its storm sewers resulted in ponding and flooding of that part of Nameoki Road where the collision occurred, which, in turn, caused the Barton vehicle to stall and the Winklemeier vehicle to be unable to stop. Plaintiff alleged that his injuries were the "direct and proximate result of the negligent acts or omissions" of the defendant city. Seeking $250,000 and costs of suit, plaintiff alleged, among other things, that the city had negligently and carelessly failed to inspect and to maintain adequately its storm sewer system after installation, that it had "[n]egligently and carelessly accepted the design and plans pertaining to road widening installation" in the area in question in 1966 when the city knew or should have known "of prior drainage problems and prior drainage recommendations which it failed to heed in accepting the design and plans as aforesaid," and that it had "[n]egligently and carelessly failed to rectify and alleviate the poor drainage along and upon" that part of the road in question when the city knew or should have known "through its own observation or from prior studies pertinent to [the area in question] that the drainage provided was not adequate."

Finding the plaintiff free from contributory negligence, the jury found against the defendant city and awarded the plaintiff $100,000. The trial court denied both the city's post-trial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial and the plaintiff's motion for an order of "additur awarding the Plaintiff additional damages in the amount of $100,000" or, in the alternative, an order granting him a new trial on the issue of damages only. The city has appealed raising several issues. Plaintiff has cross-appealed contending that the damages awarded him were inadequate as a matter of law. In view of the disposition we make in this case we consider but one of the issues raised by the city, that of proximate cause.

In the often cited and frequently quoted case of *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 316-18, 45 N.E.2d 665, 675, with respect to the relation between independent acts of third persons and proximate cause, the court stated:

> "This court in the case of *Illinois Central Railroad Co., v. Oswald*, 338 Ill. 270, has clearly announced the rule applicable in this case. It was there said that if the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection

between the original wrong and the injury and itself becomes the proximate or immediate cause. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act. (*Briske v. Village of Burnham*, 379 Ill. 193.) The test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence. (*Seith v. Commonwealth Electric Co.*, 241 Ill. 252.) If the act of a third party is the immediate cause of the injury and is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the original wrong, the connection is broken and the first act or omission is not the proximate cause of the injury. There may be more than one proximate cause of an injury. But if two wholly independent acts, by independent parties, neither bearing to the other any relation or control, cause an injury by one creating the occasion or condition upon which the other operates, the act or omission which places the dangerous agency in operation is the efficient intervening cause that breaks the causal connection and makes the other act or omission the remote and not the proximate cause of the injury.

\* \* \*

What constitutes the proximate cause of an injury in a particular case is ordinarily a question of fact to be determined from all the attending circumstances, and it can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. (*Phillabaum v. Lake Erie and Western Railroad Co.*, 315 Ill. 131.) Manifestly and undoubtedly, neither the lack of insulation nor the sagging wires did anything more than furnish a condition, and the intervening, independent act of the crane operator was the efficient and proximate cause of the fatal injuries to decedents. There is no evidence in the record tending to show otherwise. The trial court properly entered judgment in favor of the defendant Public Service Company of Northern Illinois, notwithstanding the verdict."

Applying the facts of the case at bar to the law as stated, we find that any negligence on the part of the city of Granite City did nothing more than furnish a condition by which plaintiff's injury was made possible. If the condition caused an injury by the subsequent, independent act of the third person, John Winklemeier, the creation of the condition by the city could not have been the proximate cause of plaintiff's injury. The negli-

'gent act of Winklemeier actually produced plaintiff's injury; any negligence on the part of the city with regard to the installation and maintenance of the drainage system in the street could have been merely the occasion providing an opportunity for the causal agency to act. It cannot be said that in the exercise of reasonable diligence the defendant city could have anticipated as a natural and probable result of its conduct in the installation or maintenance of its storm sewers that during a rainstorm of sufficient intensity to cause flooding of a portion of Nameoki Road the vehicle of one of the motorists driving in that street would stall, that another motorist driving in the same direction would stop to render assistance to the stalled motorist, turn his vehicle around and position it so that it was "head to head" with and in close proximity to the stalled vehicle, that the driver of the second vehicle would then place himself between the two vehicles while he was looking into the problem with the stalled vehicle, and that yet a third vehicle would approach its driver, see the stalled vehicle, apply his brakes, be unable to stop, strike the stalled vehicle in the rear, drive it into the second vehicle and in the process injure the driver of the second vehicle. Nor can it be said that the third person, Winklemeier, was under the control of the city of Granite City. The facts are undisputed and such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. Manifestly and undoubtedly the city's alleged acts and omissions with respect to its drainage system did nothing more than furnish a condition; the intervening, independent act of Winklemeier was the efficient and proximate cause of plaintiff's injury. The actions or omissions of the city with regard to the installation and maintenance of the Nameoki Road drainage system are remote indeed, not proximate, to the injury of the plaintiff. There is no evidence in the record tending to show otherwise. Thus, as a matter of law the proximate cause of plaintiff's injury in this instance cannot be the defendant city's conduct with reference to its storm sewers.

We have examined a number of cases in which the negligence of a municipality or other similar entity was alleged by a plaintiff to be the proximate cause of an injury and found by a court of review to have furnished nothing more than a condition. In *Storen v. City of Chicago* (1940), 373 Ill. 530, 27 N.E.2d 53, the plaintiff, a seven-year-old child, had been injured while playing near a fire hydrant, which was located in the center of a parkway or grass plot between the paved portion of a street and the sidewalk. An automobile traveling west struck a car parked along the street curb on the same side of the street as the hydrant and east of it with such force that the parked automobile was forced in a westerly direction along the street curb, which had been constructed by the defendant. When the car that had been struck reached a point where the curb was level with the pavement of the street for about 10 feet, the car

veered onto the parkway and pinned the plaintiff against the hydrant, thereby injuring her. The curb had been constructed in that way at that point in anticipation of the construction there of a driveway, which had never been built. Reversing a $15,000 jury verdict for the plaintiff, the court explained its ruling:

> "The issue presented for decision is whether the construction and maintenance by the defendant of the opening in the curb for use as a driveway constituted negligence, and, if so, whether such negligence was a contributing cause of plaintiff's injuries. Admittedly, the negligence of the person driving the automobile which struck [the] parked car was the immediate cause of plaintiff's injuries. The question remains, did defendant's negligence, if any, also render it accountable to plaintiff. In short, was the condition of the curb, in legal contemplation, a direct contributing cause of the injuries suffered by the plaintiff. Where two or more persons, under circumstances creating primary accountability, directly produce a single, indivisible injury by their concurrent negligence, they are jointly and severally liable, even though there is no common duty, common design or concerted action. [Citations.] If, however, a negligent act or omission does nothing more than furnish a condition making an injury possible, and such condition, by the subsequent act of a third person, caused an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. [Citation.] Obviously, the depression in the curb in the present case did nothing more than furnish a condition and, if it constituted negligence on the part of defendant, was not an act concurrent with the negligence of the driver of the automobile which struck the parked car. The action of the driver, moreover, was not such as in the exercise of reasonable diligence the defendant would have anticipated, nor was the driver under the defendant's control." 373 Ill. 530, 533-34, 27 N.E.2d 53, 54-55.

In the subsequent case of *Briske v. Village of Burnham* (1942), 379 Ill. 193, 39 N.E.2d 976, cited in *Merlo*, the plaintiff sought to recover damages for personal injuries suffered when an automobile in which she was riding as a guest struck a barricade across a street vacated two years earlier by the defendant village. Suing two railroad companies, together with the village, the plaintiff maintained that the defendant village had been "negligent in vacating the street and then leaving it, apparently a public thoroughfare, in a dangerous condition for travelers, without sufficient notice or warning at the point of vacation that the street beyond was closed and dangerous, and that, in the absence of such notice, the village remained liable for defects in the street." (379 Ill. 193, 198, 39 N.E.2d 976, 978.) Affirming the appellate court's reversal of a $3,000 jury verdict and

limiting its inquiry to a determination of the proximate cause of the accident, the court held as follows:

> "Manifestly, neither the fact that the vacated street was open to public travel nor the existence of the barricade did anything more than furnish a condition, and if either constituted negligence on the part of the respective defendants they were not acts concurrent with the negligence of Jakubcyk, the driver of the automobile in which plaintiff was a guest. In short, the intervening efficient cause of plaintiff's injuries was Jakubcyk's negligence." 379 Ill. 193, 199, 39 N.E.2d 976, 979.

In the more recent case of *Carr v. Shirland Township* (1978), 66 Ill. App. 3d 1033, 384 N.E.2d 449, the plaintiff had been injured while a passenger in a car that had proceeded into an intersection without stopping and had collided with a pickup truck. The plaintiff sued the driver of the car and Shirland Township alleging that the defendant township had been negligent in various respects, including its placement or maintenance of a stop sign at the intersection in question. The court found that the driver of the car had a duty to yield the right of way to the driver of the pickup truck "even without the presence of the 'Stop Ahead' signs or the 'Stop' sign." (66 Ill. App. 3d 1033, 1036, 384 N.E.2d 449, 452.) Affirming the trial court's judgment that plaintiff had failed to state a cause of action against the township, the court quoted as follows the rule set forth in *Briske*, which had cited *Storen*, among others, for the proposition:

> " 'If a negligent act or omission does nothing more than furnish a condition making an injury possible, and such condition, by the subsequent independent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury.' " (66 Ill. App. 3d 1033, 1037, 384 N.E.2d 449, 452.)

In *Carr* the court held that "the facts indicate that none of the allegedly negligent acts on the part of Shirland were the proximate cause of plaintiff's injuries and, at most, such acts furnished merely a condition making plaintiff's alleged injuries possible." 66 Ill. App. 3d 1033, 1037, 384 N.E.2d 449, 452.

In a still more recent case, *Jeanguenat v. Zibert* (1979), 78 Ill. App. 3d 948, 397 N.E.2d 1235, the plaintiff had been injured in a collision between the automobile in which she had ridden as a passenger and an illegally parked car that it had struck. Plaintiff sued the driver of the automobile in which she had ridden, the owner of the parked car and the city of Peru. The allegation of negligence asserted against the defendant city involved "the failure 'to maintain adequate and sufficient no-parking signs and

markings' in the vicinity of the accident." (78 Ill. App. 3d 948, 952, 397 N.E.2d 1235, 1239.) The court affirmed the trial court's directed verdict in favor of both the owner and operator of the parked car and the city of Peru, applying the same rationale to the asserted negligence of both of these defendants. The court deemed both *Merlo* and *Briske* controlling, stressed the "total and unexplained inattention to the roadway" (78 Ill. App. 3d 948, 952, 397 N.E.2d 1235, 1239) of the driver of the car in which plaintiff had ridden and concluded that to the extent that the negligence of either the driver of the illegally parked car or the city of Peru contributed to obstructing the road where the accident occurred, that obstruction by them was the remote and not the proximate cause of the plaintiff's injury. The court found that the subsequent independent act of the driver of the vehicle in which plaintiff was passenger became the proximate or immediate cause of his injuries. We consider the analysis in each of these cases sound and of guidance to us in our determination in the case at bar.

Because in the instant case as a matter of law any negligence on the part of the city could not have been the proximate cause of plaintiff's injury, we can but conclude that the trial court should have granted the city's motion to enter judgment in its favor notwithstanding the verdict, and we hereby enter judgment in favor of the defendant city of Granite City.

In addition to the foregoing, we find another basis in the record to require reversal of the judgment under review. Earlier in this opinion we alluded to the fact that motorist Winklemeier was not under the control of the city of Granite City so that it would be liable for his conduct in striking the stalled vehicle. Upon the basis of the record before us, we think it could also be said that the act or omission of the city of Granite City with respect to the installation and maintenance of the Nameoki Road drainage system was not the cause, proximate or remote, of the failure of Winklemeier's brakes or of his collision with the stalled vehicle. Winklemeier's testimony as a witness called by plaintiff upon direct, cross-examination and redirect examination refuted plaintiff's claim and insinuation that Winklemeier's brakes had failed because of moisture which resulted from the flooded condition of Nameoki Road. His repeated testimony was that his brakes "grabbed" and that he skidded into the stalled car. While it is true that the water upon the road would induce skidding, the same consequence would attend a wet, as distinguished from a flooded, road surface. No evidence was presented which would contradict the Winklemeier testimony that his brakes were working, that they "grabbed" and that he skidded into the stalled vehicle. The alleged negligence of the city in installing and maintaining the drainage system

for Nameoki Road cannot, therefore, be assigned as a cause of the collision of the Winklemeier vehicle with the stalled car, and the city therefore committed no negligent act or omission that contributed to the collision. A light rainfall that did not result in flooding of Nameoki Road would furnish a wet road capable of causing skidding.

In view of the conclusion we reach with respect to the element of causation, we necessarily find no merit in the plaintiff's contentions in his cross appeal.

Reversed.

KASSERMAN, J., concurs.

JUSTICE WELCH, specially concurring:

I concur in the result reached by the majority only insofar as it is based upon the lack of proof that the flooding of Nameoki Road was a cause of Winklemeier's collision with the stalled Barton vehicle. As noted by the majority, Winklemeier did not state that his brakes failed to function when he depressed the brake pedal or that he swerved out of his lane when he applied the brakes. Instead, he recalled that his brakes had "grabbed." This testimony, which is uncontradicted, does not support the plaintiff's theory that the conduct of Granite City in not alleviating the flooding of Nameoki Road contributed to the collision. Consequently, the plaintiff's chain of causation is incomplete and the evidence introduced at trial does not support the jury's verdict against the city.